[Civil No. 2963.    Filed February 18, 1931.]

[296 Pac. 251.]

ARIZONA LAND AND STOCK COMPANY, a Corporation, Appellant, v. I. A. MARKUS, Appellee.

Messrs. Baker & Whitney and Mr. William G. Christy, for Appellant.

Mr. Sam H. Kyle and Mr. C. R. Lynch, for Appellee.

LOCKWOOD, J.—I. A. Markus, hereinafter called plaintiff, brought suit against Arizona Land & Stock

Company, a corporation, hereinafter called defendant, to quiet title to a certain parcel of ground located in the town of Gila Bend. The case was tried to the court without a jury, and judgment rendered in favor of plaintiff, and from said judgment this appeal was taken.

Plaintiff's complaint, in substance, alleges that he is the legal owner of lot 12, block 13, of the townsite of Gila Bend, and that he acquired title to said real estate by a sheriff's deed, dated February 12, 1926, by virtue of a sale under execution issued out of the superior court of Maricopa county, in an action in escheat by the state of Arizona against John Doe, Richard Roe and the unknown heirs of Joe Horran, deceased. The complaint then sets up that the defendant named herein asserts some right or interest in the real estate adverse to the rights of the plaintiff, and has entered upon the premises and is withholding them from plaintiff, and ends with the usual prayer for relief in the ordinary suit to quiet title. There were other parties named as co-defendants, but, as they either disclaimed or defaulted, we need not consider them.

Defendant demurred to the complaint, denied plaintiff's ownership, and set up the affirmative defense that it claimed title to the land by virtue of a tax deed issued as the result of a suit instituted in the year 1924 by the state of Arizona and the county of Maricopa for the purpose of the collection of certain delinquent taxes on said premises for the years 1908 to 1920, inclusive, and by adverse possession for more than ten years. It also alleged the escheat suit did not make defendant a party thereto, nor was it served with any process therein, nor had it any notice of such suit; and, further, that the state of Arizona, at the time of the institution of the escheat proceedings, had knowledge of defendant's claim to such

land. It asked that its title be quieted against plaintiff. The demurrer was overruled, and the case tried before the court on various written exhibits, and the testimony of a large number of witnesses, and judgment was rendered in favor of plaintiff, quieting his title as prayed for.

There are some four assignments of error, the first three of which, in substance, are that the judgment was contrary to the evidence and the law, for three reasons: (a) That the evidence was not sufficient to sustain a finding that title to the premises was in plaintiff; (b) that the evidence showed affirmatively that plaintiff's only source of title was a judgment which was void and of no effect as against defendant; and (c) that the evidence showed a title to the premises in defendant superior or equal to plaintiff's title. No transcript of the testimony was filed, although the minutes show that a number of witnesses were heard, and it is urged by plaintiff that under our holdings, when the record shows affirmatively that the evidence on which the trial court based its judgment is not all before this court, we will not consider an assignment that the evidence does not sustain the judgment. *Ensign* v. *Koyk*, 31 Ariz. 1, 250 Pac. 246; *Billups* v. *Utah Canal etc. Co.*, 7 Ariz. 211, 63 Pac. 713; *Thomas* v. *Bartleson*, 14 Ariz. 513, 131 Pac. 973.

Defendant, on the other hand, contends that, while this is the rule in the ordinary case, yet where, as in this case, the principal exhibits are certified copies of the judgment-rolls of two actions in a court of record, and therefore not susceptible of contradiction by parol evidence, this court can and should consider such assignments of error. We are of the opinion that the true rule in such a situation is that, if the judgment-rolls merely fail to present sufficient evidence to sustain the judgment, we will presume that the parol evidence supplied the missing links in the

chain, and will therefore hold that the evidence was sufficient. If, however, it appears affirmatively from the judgment-rolls so in evidence before us that certain facts exist which as a matter of law would make the judgment rendered erroneous, we will then reverse the case on the ground stated. Let us then examine the judgment-rolls in question to determine whether or not they show affirmatively that the judg-. ment rendered in this case is contrary to law.

Plaintiff's title is based on the sheriff's deed issued as a result of suit No. 21012–B, filed in the superior court of Maricopa county. The title of this case is "State of Arizona against John Doe, Richard Roe and the unknown heirs of Joe Horran, deceased." The complaint sets up, in substance, as follows:

Prior to the year 1915 Joe Horran, who was then seized in fee of the land in question in this action, left the town of Gila Bend, Arizona, and died intestate shortly thereafter; leaving no widow nor any known kindred capable of inheriting his estate. The complaint further alleges "that the said Joe Horran, deceased, was the last person lawfully seized of said land, but that the defendants, John Doe and Richard Roe, are now in the possession of said real estate and premises, and are claiming, or attempting to claim, an interest therein, adverse to the State of Arizona and in violation of the statutes thereof." It then states that more than seven years have elapsed since Joe Horran has been known to exist; that no part of the estate has been sold for the payment of any alleged debts of the deceased; that none of the defendants have any right to the estate, and that it has escheated to the state of Arizona. There follows a prayer that the property be adjudged to belong to the state, and that it be sold as provided by law.

The county attorney filed an affidavit setting up "that the residence of the defendants, John Doe,

Richard Roe and the unknown heirs of Joe Horran, deceased, are unknown to this affiant; that personal service of summons cannot be had on said defendants, as he is advised and informed,'' and asked for service by publication, which service was made in the usual manner. Judgment was rendered finding that Horran had died intestate and without heirs more than seven years before the filing of the action, and that he was the last person lawfully seized and possessed of the land, and ordering that a sale be made in accordance with law. The sale was made to plaintiff herein, and in due course of time a sheriff's deed issued.

The real question before us is whether or not the judgment-rolls and documentary evidence before us show affirmatively that the escheat proceedings were void as against defendant. In order to determine this we must refer to the escheat statute then in force, quoting therefrom somewhat at length. It reads, so far as is necessary for the disposition of this case, as follows:

''1509. If any person die, seized of any real estate, or possessed of any personal estate, without any devise or bequest thereof, and having no heirs, or where the owner of any real or personal estate shall be absent for the term of seven years, and is not known to exist, such estate shall escheat to and vest in the state.

''1510. When the county attorney of any county shall be informed or has reason to believe . . . that no letters of administration on the estate of an intestate, who has died without heirs have been granted, he shall file a complaint in behalf of the state in the superior court of the county where such estate or some part thereof is situated, which complaint shall set forth a description of the estate, the name of the person last lawfully seized or possessed of the same, the names of the tenants or persons in actual possession, if any, and the names of the persons claiming the

estate, if any such are known to claim the same, and the facts and circumstances in consequence of which such estate is claimed to have escheated; praying for a writ of possession for the same in behalf of the state.

"1511. The tenants or persons in actual possession of the estate, if any, and the persons claiming the estate, if any, shall be named parties defendant in such complaint, and also all persons claiming any right, title or interest in or to the property described in the complaint, or any part thereof.

"1512. Upon the filing of such complaint the clerk of the superior court shall issue a summons in substantially the form provided by law for a summons in a civil action; such summons shall be served upon the persons individually named as defendants, in the manner provided by law for service of summons in civil actions, and such summons shall also be published in a newspaper in the manner and for the time provided by law for the service of summons in a civil action by publication."

"1514. If no person, after service of the summons as aforesaid, shall appear and plead within the time prescribed by law, then judgment shall be rendered by default in favor of the state."

"1516. If upon the trial it appears from facts found or admitted that the state has good title to the estate, real or personal, in the complaint mentioned, or any part thereof, judgment shall be rendered that the state shall be seized or possessed thereof, and, at the discretion of the court, recover costs against the defendants."

"1518. When any judgment shall be rendered that the state be seized or possessed of any estate, such judgment shall contain a description thereof, and shall vest the title in the state.

"1519. A writ shall be issued to the sheriff or any constable of the proper county, commanding him to seize such estate vested in the state; and if the same be personal property or real estate, he shall dispose thereof at public auction, in the manner provided by law for the sale of property under execution, and the proceeds paid into the treasury of the state."
Rev. Stats. Ariz., Civ. Code, 1913.

It will be seen upon examining this that any persons claiming the estate or any right, title or interest thereto are necessary parties to the suit if they are known. The county attorney attempted to make all claimants parties under the names of John Doe and Richard Roe, and the proceedings were carried through entirely with these names alone. Was this sufficient to show title as against defendant in this action?

Paragraph 426, Revised Statutes of Arizona, Civil Code of 1913, reads as follows:

"When the plaintiff is ignorant of the name of a defendant, such defendant may be designated in any pleading or proceeding by any name; and when his true name is discovered, the pleading or proceeding may be amended accordingly."

It is apparent that the state was proceeding under this statute. Defendant claims, however, that this applies only when plaintiff is ignorant of the true name of the defendant, but that when he has knowledge of such name he may not designate him by a fictitious one, but must use the true name in order to obtain jurisdiction of his person. We are of the opinion this is the correct interpretation of that statute, and particularly is it so when the defendant does not actually appear in court and is not personally served with summons. Any other rule would be unjust to claimants of property and provocative of fraud, if not unconstitutional. *Rosencrantz* v. *Rogers,* 40 Cal. 489; *McKinlay* v. *Tuttle,* 42 Cal. 570. If, however, as a matter of fact, plaintiff has no knowledge of the true name of the defendant, since an escheat proceeding is *in rem,* or at least *quasi in rem,* the usual rule in such cases is that a fictitious name under proper allegations in the complaint may be used to designate unknown claimants of property, and that a judgment rendered under such circumstances, provided the

terms of the statutes are followed substantially, will divest such owners of their titles and be conclusive against them in favor of the state. *Hamilton* v. *Brown,* 161 U. S. 256, 40 L. Ed. 691, 16 Sup. Ct. Rep. 585; *Tyler* v. *Judges, etc.,* 175 Mass. 71, 51 L. R. A. 433, 55 N. E. 812; *American Land Co.* v. *Zeiss,* 219 U. S. 47, 55 L. Ed. 82, 31 Sup. Ct. Rep. 200.

Defendant alleges that in this case plaintiff did have constructive notice of the true name of its predecessor in interest, W. T. Smith, by virtue of the fact that a sheriff's certificate of sale of the property to Smith was of record before it filed the escheat proceeding. Is such a record constructive notice for this purpose? This same question has arisen in California, and the Supreme Court of that state held that plaintiff in a suit of this character was not obliged to search the records to determine the true name of a defendant, nor were such records notice to him of such names. *Irving* v. *Carpentier,* 70 Cal. 23, 11 Pac. 391. While this is undoubtedly the rule in California, and it may perhaps be reasonable under their recording statute, we are of the opinion it is not so in Arizona. The California statute in regard to the effect of recording an instrument reads as follows:

"*Conveyance filed with recorder is constructive notice, etc.* Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to *subsequent purchasers and mortgagees;* and a certified copy of any such recorded conveyance may be recorded in any other county and when so recorded the record thereof shall have the same force and effect as though it was of the original conveyance." (Italics ours.) Kerr's Cyc. Codes of California, Civil Code, § 1213.

The Arizona statute, on the contrary, is in the following language:

"The record of any grant, deed or instrument of writing authorized or required to be recorded, which shall have been duly acknowledged for record and duly recorded in the proper county, shall be taken and held as notice to *all persons* of the existence of such grant, deed or instrument." (Italics ours.) Rev. Stats. Ariz. 1913, Civ. Code, par. 2084.

It will be seen that our statute is far broader in its terms than that of California. It applies, not merely to subsequent purchasers and mortgagees, but to all persons of every description. We have discussed the general effect of our statute as notice several times. In the case of *Lewis* v. *State,* 32 Ariz. 182, 256 Pac. 1048, 1050, we stated:

"The whole object of all laws which require or permit instruments to be filed, registered, or recorded in any public office is that the general public, if interested in the subject-matter of the instrument, may proceed to the proper office, and if therein they find an instrument duly filed, registered, or recorded, they may and must act with the presumption that such an instrument is indeed in existence and is genuine, and govern their affairs accordingly."

See, also, *First Nat. Bank of Yuma* v. *Yuma Nat. Bank,* 30 Ariz. 188, 245 Pac. 277. Constructive notice, if it exists, has the same effect as actual notice. We hold, therefore, that the county attorney of Maricopa county at the time he filed the escheat suit in question had constructive notice that W. T. Smith claimed an interest in the property in question, and, such being the case, the latter could not be divested of his rights thereto by making John Doe and Richard Roe parties to the action and serving summons by publication as against them. Had Smith actually been served with summons personally, or had he appeared and defended, the situation would indeed have been different, but such was not the case. The judgment in the escheat proceedings therefore was not

*res adjudicata* as against Smith or his successor in interest, defendant herein.

We have, then, the situation of two parties to an action, each claiming that its title should be quieted as against its opponent. Plaintiff bases his title on the escheat proceedings, while defendant claims under a tax sale and adverse possession. It is apparent that the vital issue is as to the death of Joe Horran. If Horran died intestate, as was found by the judgment in the escheat proceedings, before 1918, leaving no heirs, under the great weight of the later authorities, the title vested immediately in the state. *In re Melrose Avenue*, 234 N. Y. 48, 23 A. L. R. 1233, and notes, 136 N. E. 235.

Escheat proceedings, under this rule, are similar to the statutory proceedings to establish heirship in probate, and have no effect upon the title itself, but merely establish judicially in whom it is. If, then, the title to the land vested in the state before 1918, no taxes could be levied on it for the years 1919–1920. Section 2, art. 9, Const. Ariz. And since the property was sold under a tax sale by the state for taxes for the years 1908 to 1920, inclusive, the sale was void and no title passed to defendant by reason thereof. *Hoskins* v. *Illinois Cent. R. Co.*, 78 Miss. 768, 84 Am. St. Rep. 644, 29 South. 518; *Cornelius* v. *Ferguson*, 23 S. D. 187, 121 N. W. 91.

If, on the other hand, Horran were living in 1920, or left heirs, the taxes for which it was sold to defendant were a valid and superior lien on the property, and the tax sale would pass title to defendant good as against the escheat action. *Steinfeld* v. *State, ante*, p. 389, 294 Pac. 834.

As we have stated, the judgment in the escheat case, finding that Horran did die intestate before 1918, leaving no heirs, is not binding on defendant. On the other hand, it is regular on its face. The

court had jurisdiction of the subject matter, it had jurisdiction to render the particular judgment which it did, and it had jurisdiction of the persons of the unknown heirs of Joe Horran. It was therefore a valid judgment, but was not *res adjudicata* against defendant.

We are of the opinion that under these circumstances plaintiff was entitled to show affirmatively in the present action Horran's death, intestate and without heirs, before some portion of the tax lien for which the property was sold attached, and that such showing, added to the record evidence, would sustain the judgment rendered. As we have said previously, it appears by the record that oral testimony was offered, but such testimony is not before us. Under our rule hereinbefore stated, we are bound to presume that the oral testimony did supply sufficient evidence on the vital issue to sustain the judgment of the trial court. We must also presume that such evidence negatived defendant's claim of adverse possession for more than ten years. In view of what we have said, we need not consider the fourth assignment of error.

For the foregoing reasons, the judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.