KROSKY, APPELLEE, *v.* OHIO EDISON CO. ET AL.; FRUEHAUF CORPORATION, APPELLANT.

(No. 3585—Decided June 27, 1984.)

*Michael R. Kube,* for appellee.

*Edward J. Cass* and *Neil E. Roberts,* for appellant.

GEORGE, J. In June 1981, William Krosky, plaintiff-appellee, was employed by White Transport Company as a truck driver. On June 21, Krosky was assigned to operate a dump truck and deliver gravel to a construction site at the Taylor Woods Industrial Park in Elyria, Ohio. After he had made several trips, Krosky was unloading gravel at the site when the rim of the bed came in contact with overhead power lines. Krosky received an electrical shock which resulted in second and third degree burns.

Krosky filed a complaint against Ohio Edison Co., alleging negligent construction, care, and maintenance of its lines. He also brought suit against Fruehauf Corporation and Dunlap's Garage alleging a defect in the dump truck. Krosky further named Logos Development Co. and Horner-Hibbard in the suit and claimed they negligently failed to provide a safe place for him to work. Prior to trial Krosky reached a settlement with each of the defendants except Fruehauf Corp., appellant herein.

At trial Krosky claimed that Fruehauf's truck was defective, premised on two alternate theories. He first claimed it was defectively designed because of an absence of insulation to portions of the truck which resulted in his injuries. Second, he maintained that Fruehauf had a duty to warn of the truck's inherently dangerous condition; *i.e.,* that the truck bed and frame acted as an electrical conductor upon contact with electric wires.

The jury returned a general verdict in favor of Krosky in the amount of $300,000. This award was offset by the amount Krosky received by virtue of his settlement, making Fruehauf liable for $227,500.

### Assignment of Error I

"The trial court committed reversible error by ruling that appellee's allegation of inadequate warnings was based on principles of strict liability in tort."

At the outset this court notes that Krosky based his claims on theories of strict liability. He did not allege any negligence on the part of Fruehauf. Fruehauf alleges that a theory of recovery based on a failure to warn is only recognized in Ohio as a negligence action and is not a strict liability action. However, in *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, at 322 [4 O.O.3d 459], the court stated:

"* * * Because there are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort, and because the Restatement formulation, together with its numerous illustrative comments, greatly facilitates analysis in this area, we hereby approve Section 402A of the Restatement of Torts 2d."

Section 402A of the Law 2d, Torts (1965) 347, provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

After adopting Section 402A, the Supreme Court in *Temple, supra,* at 321, set forth the criteria for recovery on the basis of strict liability:

"It is now well established that, in order for a party to recover based upon a strict liability in tort theory, it must be proven that: '(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant, and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss.' *State Auto. Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151 [65 O.O.2d 374]. * * *."

Previously, the court in *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227, 235 [35 O.O.2d 404], established the standard by which a product would be considered defective:

"* * * The warranty in this case is the manufacturer's representation, implicit in the sale of the steel joists, that they were of good and merchantable quality, fit and safe for their ordinary intended use. * * *"

A review of these early cases and their progeny leaves unanswered the question of whether strict liability may be imposed upon a manufacturer for a failure to provide an adequate warning. When there is a failure to warn, which creates an unreasonably dangerous condition, is such a failure a defect which subjects the manufacturer to strict liability? This was answered affirmatively by the Supreme Court in *Seley* v. *G. D. Searle & Co.* (1981), 67 Ohio St. 2d 192 [21 O.O.3d 121]. On page 197, the court stated:

"* * * when the drug manufacturer fails to give adequate warning, the drug

may be considered 'defective' and *unreasonably* dangerous, thereby subjecting the manufacturer to strict liability for resulting injuries. * * *"

The Sixth Circuit Court of Appeals, in *Moran* v. *Johns-Manville Sales Corp.* (C.A. 6, 1982), 691 F. 2d 811, 814, applied the principles set forth in *Seley, supra,* to a case involving asbestos contamination:

"The parties both look to *Seley* for the legal principles relevant to liability in this case. Thus, they apparently agree that asbestos insulation material is an 'unavoidably unsafe product,' and that Ohio law would not impose strict product liability on its manufacturers unless they failed to provide the warnings required by *Seley.*"

The court went on to say, however, that the adequacy of a warning is a question of fact.

In *Overbee* v. *Van Waters & Rogers* (C.A. 6, 1983), 706 F. 2d 768, the court was presented with the issue of the sufficiency of an existing warning. The plaintiff, who was injured while removing the top from a steel drum, asserted claims of negligence and strict liability. The circuit court of appeals at 770 agreed with the trial court's conclusion:

"* * * [T]hat Ohio does not recognize a strict liability cause of action arising from allegations of inadequate warning. * * *"

The court, however, at fn. 3, recognized the language in *Seley, supra,* with respect to unavoidably unsafe products.

The distinction raised by the decisions in *Overbee* and *Moran* are important to an analysis here. An examination of these cases leads to the conclusion that when a product is unreasonably dangerous and has an inadequate warning, an injured user may prosecute an action based upon strict liability in tort.

Here, the dump truck was dangerous to an extent beyond that which would be contemplated by the ordinary user possessing knowledge common to other similar users. Fruehauf knew that the truck would be used to carry materials which would be unloaded by the raising of the bed of the truck. Fruehauf could, therefore, anticipate that the raising of the bed above the frame of the truck might result in the bed's contact with overhead electrical wires, and, further, that such contact would conduct the electrical current throughout the truck body. The dump truck was thus an unreasonably dangerous product. Section 402A of the Restatement of Torts 2d. As such, Fruehauf had a duty to provide a warning. Here, there was none.

Had Fruehauf attempted to notify the user of the potential danger of coming into contact with electrical wires by providing a warning, negligence principles would be appropriately applied. Here, however, the defective condition is the result of the lack of any warning on an unreasonably dangerous product and the principles of strict liability are applicable.

As the comments to the Restatement provide and a majority of jurisdictions now recognize, the failure to provide a warning of a dangerous condition is a defect which is unreasonable and gives rise to a cause of action in strict liability. See, *e.g.,* Section 402A of the Restatement of the Law 2d, Torts, Comment *j,* at 353; *Brochu* v. *Ortho Pharmaceutical Corp.* (C.A. 1, 1981), 642 F. 2d 652; *Price* v. *Inland Oil Co.* (C.A. 3, 1981), 646 F. 2d 90; *Cavers* v. *Cushman Motor Sales, Inc.* (1979), 95 Cal. App. 3d 338, 157 Cal. Rptr. 142; *Genaust* v. *Illinois Power Co.* (1974), 23 Ill. App. 3d 1023, 320 N.E. 2d 412; *Link* v. *Sun Oil Co.* (1974), 160 Ind. App. 310, 312 N.E. 2d 126; *Kuhner* v. *Marlyn Manor, Inc.* (1975), 135 N.J. Super. 582, 343 A. 2d 820; *Patch* v. *Stanley Works* (C.A. 2, 1971), 448 F. 2d 483; *Rost* v. *C. F. & I. Steel Corp.* (Mont. 1980), 616 P. 2d 383. See, also, Annotation (1973), 53 A.L.R. 3d 239.

Although there has been no clear statement of the law in Ohio, this court is persuaded by the case law developed in other jurisdictions, holding that a cause of action for a failure-to-warn defect may be brought under the theory of strict liability. The first assignment of error is overruled.

## Assignment of Error II

"The trial court erred by refusing to instruct the jury on the defenses of contributory negligence and/or assumption of risk."

The comparative negligence statute, R.C. 2315.19, and the case law which has developed under it are not applicable to a cause of action based upon strict liability. By its very terms R.C. 2315.19 applies only to claims based upon negligence. In light of the specific terms of the statute and in the absence of a Supreme Court ruling applying the concept of comparative fault to a strict liability action, such application will not be created by this court. See, also, *Kinard v. Coats Co., Inc.* (1976), 37 Colo. App. 555, 553 P. 2d 835. Therefore, the defenses which were traditionally available at common law have not been eliminated by the enactment of the comparative fault statute. The defenses of assumption of risk and contributory negligence are hereafter separately discussed.

A. Contributory negligence.

Section 402A of the Restatement of the Law 2d, Torts, Comment *n,* at 356, provides in part:

"* * * Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. * * *."

The concept of contributory negligence, as it has been defined, is not recognized as a defense to an action in strict liability. *Freeman* v. *Beech Aircraft Corp.* (Sept. 30, 1983), Butler App. No. 80-11-0119, unreported; *Jones* v.

*White Motor Corp.* (1978), 61 Ohio App. 2d 162 [15 O.O.3d 292]. This view is consistent with a majority of jurisdictions. See, *e.g., McCarty* v. *F. C. Kingston Co.* (1974), 22 Ariz. App. 17, 522 P. 2d 778; *Horn* v. *General Motors Corp.* (1976), 131 Cal. Rptr. 78, 551 P. 2d 398; *Nichols* v. *Coppola Motors, Inc.* (1979), 178 Conn. 335, 422 A. 2d 260; *Collins* v. *Musgrave* (1975), 28 Ill. App. 3d 307, 328 N.E. 2d 649, *Barger* v. *Charles Machine Works, Inc.* (C.A. 8, 1981), 658 F. 2d 582; *Holt* v. *Stihl, Inc.* (E.D. Tenn. 1977), 449 F. Supp. 693; and *Devaney* v. *Sarno* (1973), 125 N.J. Super. 414, 311 A. 2d 208.

This court concludes that the defense of contributory negligence is not available in a strict liability action. Therefore, the trial court did not err in failing to instruct the jury on the defense of contributory negligence.

B. Assumption of risk.

Assumption of risk is an extension of the concept of contributory negligence and is often discussed as a defense to a strict liability action. Section 402A of the Restatement of the Law 2d, Torts, recognizes this extension in Comment *n,* at 356:

"* * * On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

Thus, in order to establish the defense of assumption of risk, Fruehauf must demonstrate that Krosky knew of the danger and the possible consequences, but continued to act.

In *Benjamin* v. *Deffet Rentals*

(1981), 66 Ohio St. 2d 86 [20 O.O.3d 71], the Supreme Court stated, at 89, fn. 4:

"While appellees sound a claim in strict liability against appellant, Smith, assumption of risk operates as a complete defense to such a claim, as well as claims of negligence."

Therefore, if Fruehauf demonstrates Krosky's knowledge of the defect or the obviousness of the condition, an instruction on assumption of the risk is appropriate.

In the present case, Krosky presented two alternate theories of recovery. The first alleged a defect in the design of the truck. The record indicates that Krosky did not have knowledge of the lack of insulation or grounding in the truck. Krosky stated that he had no idea an electric current would travel throughout the frame of the truck into the handle.

Krosky's second theory was based upon Fruehauf's failure to provide adequate warnings of the dangerous condition. Krosky stated that there were no warnings or instructions on the truck regarding the dangers of coming into contact with an electric line. He stated that had such a warning been given, he would not have raised the bed of the truck.

On either basis there was no evidence that the defect was obvious or that Krosky had knowledge of the condition. He may have been aware of the general consequences of contact with a power line, but that is no indication that he was aware that the handle and the truck frame would act as conductors. Fruehauf failed to establish Krosky's knowledge of the defect. Accordingly, there was no basis upon which an instruction for assumption of risk could have been given.

Since Ohio does not recognize contributory negligence as a defense to a strict liability claim, there was no error in the trial court's refusal to give an instruction regarding such a defense. Although assumption of risk is a viable defense to a strict liability claim, an instruction is appropriate only if Fruehauf has established the obviousness of the defect or Krosky's knowledge of the condition. This court finds that Fruehauf failed to do so. Accordingly, the second assignment of error is overruled.

## Assignment of Error III

"The trial court erred by prohibiting appellant from introducing any evidence of appellee's knowledge and consciousness of the danger."

During trial Krosky made a motion *in limine* to prohibit testimony concerning certain areas:

"(1) That William Krosky knew the wires were there;

"(2) That William Krosky had dumped at that location previously;

"(3) His knowledge or lack of it as to what the wires were, or whether or not they were insulated;

"(4) That the location for dumping was selected by the contractor, Horner-Hibbard;

"(5) That William Krosky's employer told him to dump there;

"(6) That the control handle for the dump bed didn't function properly and was not insulated; [and]

"(7) That the power company knew or should have known of the dumping activity and taken precautions relative to its lines."

The motion *in limine* was granted with respect to items (3), (4), (5), and (7). The granting of a motion *in limine* is a prospective order and makes no determination as to the ultimate admissibility of the evidence. In *Riverside Methodist Hospital Assn.* v. *Guthrie* (1982), 3 Ohio App. 3d 308, 310, the court stated:

"* * * Properly utilized, a motion *in limine,* when sustained, requires a two-step procedure. First, a consideration of the motion *in limine* as to whether any reference to the area in question should be precluded until admissibility can be ascertained during trial. Second, at the time when the party desires to introduce

the evidence which is the subject of the motion *in limine,* there must be a second hearing or determination by the trial court as to the admissibility of the evidence, which is then determined by the circumstances and evidence adduced in the trial and the issues raised by the evidence. * * *"

At the conclusion of Krosky's testimony, counsel for Fruehauf made a proffer out of the hearing of the judge and the jury. Although an attempt to gain the ultimate evidentiary ruling should be done out of the hearing of the jury, the trial court should be given the opportunity to make the ruling on admissibility.

In the present case the trial court did not rule on the admissibility of the evidence since the motion *in limine* was not properly renewed during trial. Until the trial court has had an opportunity to make an evidentiary ruling on the proffer of a renewal objection, the appellant cannot demonstrate any prejudice by the sustaining of the motion *in limine.* Accordingly, the third assignment of error is overruled.

The assignments of error are without merit and are overruled. The judgment of the trial court awarding William Krosky $227,500 is affirmed.

*Judgment affirmed.*

BAIRD, P.J., concurs.

QUILLIN, J., concurs in judgment only.