William N. RIMER, Crow, Inc. and
United States Aviation Underwriters,
Plaintiffs-Appellants,

v.

ROCKWELL INTERNATIONAL CORP.,
Defendant-Appellee.

No. 82–3437.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1984.

Decided July 20, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 20, 1984.

Wilbur Jacobs, argued, Wilbur Jacobs and Lawrence T. Curtis, Toledo, Ohio, for plaintiffs-appellants.

James M. Tuschman, Shumaker, Loop & Kendrick, Thomas Pletz, argued, Toledo, Ohio, for defendant-appellee.

Before EDWARDS and KENNEDY, Circuit Judges, and UNTHANK, District Judge.[*]

UNTHANK, District Judge.

William N. Rimer and other plaintiffs (Rimer) appeal, for the second time, judgment of the trial court dismissing their complaint pursuant to jury verdicts, for the second time, for defendant, Rockwell. On first appeal, this court reversed, holding that the trial court erred in submitting the case on strict liability alone. *Rimer, et al. v. Rockwell International Corp.*, 641 F.2d 450, 6th Cir.1981.

The opinion set out the relevant facts and their recitation will not be repeated. *Id.* 641 F.2d 451–454.

On December 19, 1983, Rimer filed a motion for "Summary Reversal" for the reason "that recent decisions of the Ohio Supreme Court have made the court's charge on the subject of assumption of risk erroneous as a matter of law."

In support of his motion, Rimer contends that Ohio being the forum state, adopted comparative negligence in June, 1980; that Ohio Supreme Court first applied comparative negligence prospectively only to those causes of action that arose after June, 1980; that in August 1983, more than one year after this case was tried in June, 1982, Ohio Supreme Court reversed its previous rulings and held that comparative negligence applied to all actions tried after June 28, 1980, irrespective of when the cause of action arose; and thus that comparative negligence was applicable to trial of this case in June, 1982, making the trial court's charge on assumption of risk erroneous.

■ Although this case was tried in 1982, the change of the law in 1983 by Ohio, made comparative negligence applicable to the judgment in this case since it is on appeal and not final. *Vandenbark v.*

*Owens-Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). However, applying current Ohio law does not aid the plaintiffs. While plaintiffs made certain perfunctory objections to instructions on contributory negligence and assumption of risk as noted below, they were required by Rule 51[1] to object, stating the matter to which they objected, and the grounds of the objection. Having failed to do so, they are barred from complaining about the District Court's failure to give a comparative negligence instruction. Strict compliance with Rule 51 is required and failure to state specific grounds is fatal.

Rimer argues that the trial court committed many reversible errors, with several erroneous instructions.

Other than Rimer's objections to instructions on assumption of risk, Rockwell argues that Rimer did not preserve any objections to instructions in regard other issues for purpose of appeal in that he either did not make any objections to or he did not state his objections with sufficient specificity "to bring into precise focus" the error complained of as required by Rule 51 F.R. C.P.

This Court will consider and discuss only those charged errors which are dispositive of this appeal.

■ Rimer asserts that the court's instructions on assumption of risk and contributory negligence were erroneous. Rockwell concedes that Rimer, by his objections to instructions on assumption of risk, preserved them for review on appeal, but asserts that they were correct. However, Rockwell correctly contends that Rimer did not preserve for review the contributory negligence instructions, where the only objection made was alleged failure of court to charge that burden was on Rockwell to prove contributory negligence. This objection was not appropriate in that the trial

---

[*] Honorable G. Wix Unthank, United States District Court for the Eastern District of Kentucky, sitting by designation.

1. "(..... No party may assign as error the giving or the failure to give an instruction

unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection...." F.R.C.P. 51).

court did instruct on such burden (Tr. 1097) and the objection *did not comply* with requirements of F.R.C.P. 51. It is further noted that this court, on first appeal, determined that contributory negligence was a jury issue. 641 F.2d 455.

In objecting to assumption of risk instruction, Rimer assigned as grounds: (1) there was not sufficient evidence to support it and also (2) that the instructions placed the burden on him that he "should have known" of the danger involved. Immediately following this language the trial court further instructed in substance that if Rimer had full knowledge and understanding of and realized then the danger and risk of using the product, and further that he had the opportunity to avoid such danger, then he assumed the risk. While the instruction "should have known" would be very questionable, standing alone, the court's charges on this issue must be considered in their entirety and when so taken as a whole, the instructions on assumption of risk are proper and correct. *Batesole v. Stratford*, 505 F.2d 804, 809 (6th Cir., 1974).

Rimer contends the trial court erred in submitting the failure to warn as a negligence issue rather than an issue of strict liability. When trial court announced decision to instruct that failure to warn "is strictly negligence," Rimer excepted to the ruling stating:

"... reserving our rights (to) claim that in law a failure to warn is one of the defects that is proof of strict liability."

While this is the extent of Rimer's objection, it is sufficient to preserve his right to review, on appeal, the instruction on failure to warn as a strict liability issue.

The parties do not dispute that the law of Ohio is applicable to the issues before this court. In the case of *Overbee v. Van Waters & Rogers*, 706 F.2d 768, 6th Cir., 1983, this court had for review the action of lower court in directing a verdict for defendant on issue of strict liability. The lower court, relying on case of *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267, had concluded "that Ohio does not recognize a strict liability cause of action arising from allegations of inadequate warning." 706 F.2d 770. This court affirmed that decision holding that "no strict liability cause of action arising from allegations of inadequate warning could be maintained under Ohio law." 706 F.2d 768. In so holding this court quoted from *Knitz v. Minster Machine Co.*, 69 Ohio St.2d 460, 432 N.E.2d 814:

"(i)t is .... apparent that the rule imposing obligation on the manufacturer or seller to give suitable warning of a dangerous propensity of a product is a rule fixing a standard of care, and any tort resulting from the failure to meet this duty is, in essence, a negligent act."

. . . . .

"Moreover, we held in *Leichtamer v. American Motors Corp.*, 67 Ohio St.2d (456) at page 469, 424 N.E.2d 568 (1981) that '(t)he absence of a warning does not, without more, provide a basis for (strict) liability; rather, evidence of warning is in the nature of an affirmative defense to a claim that a product is unreasonably dangerous'." 706 F.2d 770.

Rimer is relying, in part, on the case of *Seley v. G.D. Searle & Co.*, 67 Ohio 2d 192, 423 N.E.2d 831, in support of his contention that failure to warn creates strict liability. In *Overbee, supra*, p. 770, footnote 3, this court noting that it was aware of the *Seley* case, commented further:

"In view of the clear, unequivocal statement in Knitz, however, the court is compelled to conclude that Seley is limited in application to certain drugs or other products which are 'incapable of being made safe for their intended and ordinary use'."

Rimer claims error when the trial court refused to direct a verdict for him on the issue of strict liability. It is his contention that as a matter of law, the fuel system was defectively designed; that it was foreseeable that the gas cap may become broken, improperly placed on intake valve or not replaced after refueling or maintenance work; and that the fuel system should

have been designed so as to prevent loss of fuel upon the occurrence of any of these or other foreseeable events. In considering a motion for a directed verdict, the court must view the evidence in the light most favorable to Rockwell, and make all permissible inferences. *Delk v. Holiday Inns, Inc.,* 545 F.Supp. 969, 971, 1982; *Dowdell v. U.S. Industries, Inc.,* 495 F.2d 641, 643 (6th Cir., 1974). The court must determine whether there is a submissible issue to the jury. In making such determination, this court has enunciated certain guidelines as noted in *Moran v. Johns-Manville Sales Corp.,* 691 F.2d 811 (6th Cir., 1982):

"Strictly speaking, this court does not review the actions of juries. Our review of the sufficiency of the evidence is by review of a trial judge's rulings on motions for directed verdict or JNOV. In diversity cases within this circuit, this court resolves questions of sufficiency of the evidence by applying the test of sufficiency under state law. .... Under the test in Ohio, the forum states (here also) an issue is in the province of the jury 'When there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue ...' " 691 F.2d 813. (Parenthesis added)

Here, Rimer has plead and argued this particular issue on theory of strict liability in that the proximate cause of his accident was a design defect in the fuel system in the Aero Commander 520. This court has had for its consideration other cases of alleged design defects on theory of negligence or breach of warranty. This court, in the case of *Drayton v. Jiffee Chemical Corp.,* 591 F.2d 352 (6th Cir., 1978), observed in a footnote that "...Ohio appears to use the concepts of strict liability and implied warranty interchangeably." (591 F.2d at 357, fn. 4).

The trial court instructed the jury that there were three causes of action: (1) strict tort liability wherein Rimer claims manufacturing defect; (2) negligence in failing to warn of the defect; and (3) that the aircraft was negligently designed. From an examination of all the instructions as a whole and the language used therein and in the discussions by the parties of these issues, it is apparent that the trial court and the parties used the terms "manufacturing defects" and "design defects" interchangeably.

In the case of *Gossett v. Chrysler Corporation,* 359 F.2d 84 (6th Cir.1966) the claimant proceeded on theory of negligence in the design of the product. Then, this court after noting that no Ohio cases were found defining the duties of manufacturer relative to product design, stated the following general rule:

"It is the duty of a manufacturer to use reasonable care under circumstances to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended. This duty includes a duty to design the product so that it will fairly meet any emergency of use which can reasonably be anticipated. The manufacturer is not an insurer that his product is, from a design viewpoint, incapable of producing injury." 359 F.2d 87 ...."

"... The rule is well settled that neither designer nor manufacturer has a legal duty to adopt or produce a process or product incorporating only features representing the ultimate in safety." 359 F.2d 89.

Applying the above noted guidelines, the question is whether there is sufficient evidence, considering such in a light most favorable to Rockwell, to establish a submissible factual issue to the jury or was Rimer entitled to judgment on strict liability theory as a matter of law in that the fuel system was defectively designed and such defect was the proximate cause of the accident?

In *Drayton, supra,* this court stated that:

"Under Ohio Law, proximate cause is a factual issue. .... this is true even in determining whether an independent and intervening act is sufficient to cut-off the chain of causation." 591 F.2d 352, 360.

■ An examination of the testimony of the various witnesses discloses factual disputes for the jury, to wit: (1) Whether the alleged dangers from an unitized fuel tank can be alleviated by a multitank system, as contended by Rimer, or whether the multitank system is more susceptible to pilot error and less safe, as contended by Rockwell; (2) whether the unitized fuel tank system was so defective as to be more dangerous to Rimer than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner; (3) whether the return of the airplane to service as air worthy at annual inspection in November, 1983, by an inspector who subsequently admitted he did not inspect the gas cap, which was in a rusty condition with a corroded hinge pin, after about 20-years service, and further when the same inspector, upon examining the cap after the accident, admitted the plane was not airworthy because of the condition of the gas cap, constituted an intervening cause and was the proximate cause of the accident; (4) whether the hinge pin was broken at time of the removal of gas for the refueling of the plane in readiness for Rimer's flight, with such removal being so difficult it required the use of a screw driver to force the cap resulting in the broken pin, and with Rimer being made aware of some difficulty with gas cap but there being a dispute as to the extent of such knowledge, and yet Rimer took off in flight without physically checking the cap, constituted an intervening cause and was the proximate cause of the accident; and/or (5) whether Rimer made an adequate pre-flight inspection, as he was required to do, under the circumstances of this being the first time that he was operating this 20-year old plane from a strange airport.

The trial court correctly submitted these and other factual issues to the jury.

■ This case was submitted to the jury on multiple issues: one, strict tort liability on the basis of a manufacturing defect and/or design defect; two, negligence for failure to warn of a defect. In Ohio, where more than one issue is submitted to the jury, and one or more of such issues so submitted error free and the jury returns a general verdict, under the two-issue rule such verdict is valid. *Jones v. Erie RR. Co.*, 106 Ohio St. 408, 140 N.E. 366 (1922), *Keet v. Service Machine Company, Inc.*, 472 F.2d 138 (6th Cir.1972).

■ The two-issue rule presumes that the jury found for the prevailing party on all bases on which the action was submitted to it. If there is at least one basis for the jury to find for defendant on plaintiff's strict liability theory and also one basis for the jury finding for defendant on plaintiff's negligence theory, the two-issue rule disposes of the case.

With respect to each of those theories, the defendant is entitled to maintain its verdict if there is any basis which was properly submitted to the jury. However, a verdict for defendant on the negligence claim alone will not necessarily cure an error in submitting the strict liability claim, because plaintiffs are entitled to prevail if they prove either of two theories.

■ The Ohio two-issue rule provides further support for upholding the jury verdicts in this case. For example, the verdict for defendant on the negligence claim need not have been overturned even if there had been error properly preserved for review in the instructions on contributory negligence. The basis for the jury's verdict on the negligence claim may have been a finding that the defendant was not negligent, an issue that was properly presented to the jury.

Any alleged errors in instructions on issues of negligence, assumption of risk, contributory negligence, or other issues must be disregarded with judgment on jury verdict being SUSTAINED.

Rimer has asserted other claimed errors in the instructions, admissibility of evidence and restriction of his closing arguments to the jury. However, he failed to preserve such alleged errors for review in that there were either no objection made or grounds therefor were not sufficiently specific to comply with F.R.C.P. 51. The fac-

tual issues being properly determined by a jury and the Ohio multiple issue rule being dispositive of this case, such claimed errors need not be considered. While the trial court's instructions may not be the most artfully drawn in all respects, but when considered in their entirety, they fairly and correctly present the issues, within the framework of the facts, to the jury for determination. AFFIRMED.